UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
## 23-60117-CR-ALTONAGA/STRAUSS
CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

FILED BY_____*KAN*____D.C.

**Jun 14, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

vs.

SANJAY SINGH,

        Defendant.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      Royal Bengal Logistics, Inc. ("RBL") was a Florida corporation operating an over-the-road trucking business, initially headquartered at 3700 Northwest 109th Avenue in Coral Springs, Florida, and later headquartered at 9600 West Sample Road, in Coral Springs, Florida.

2.      Defendant **SANJAY SINGH**, a resident of Coral Springs, Florida, was the founder and president of RBL.

3.      A "*Ponzi* scheme" was an investment fraud scheme that involved the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* schemes focused on attracting new investors to make promised payments to earlier-stage investors to create the false appearance that investors were profiting from a legitimate business. *Ponzi* schemes

required a consistent flow of money from new investors to continue and tended to collapse when new investment dropped or when too many investors asked for their money back at once.

## COUNT 1
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference.

2.     From in or around January 2020, and continuing through the date of this Indictment, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### SANJAY SINGH,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) causing individuals and corporations to invest in RBL based on materially false and fraudulent statements and concealment and omission of material facts; and (b) using investor funds to make payments to earlier investors in RBL, for the defendant's personal use and benefit, for the use and benefit of others, and to further the conspiracy.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.     Defendant **SANJAY SINGH** represented to the public that he was the founder and president of RBL, a thriving over-the-road trucking company. **SINGH** and his co-conspirators met, spoke to, or corresponded with individuals and representatives of corporations (the "investors") to discuss investments in RBL and created and posted promotional videos to the Internet to support these efforts.

5.     **SANJAY SINGH** and his co-conspirators offered investors the opportunity to invest in RBL's "truck program," through which RBL contracted to use investor funds to purchase and operate trucks for investors while guaranteeing the investment principal and monthly returns typically exceeding 200 percent, excluding the value of the truck. **SINGH** and his co-conspirators also offered investors separate opportunities to make investments that supported RBL's operations or its "trailer manufacturing program." These other types of investments would yield guaranteed returns ranging from 20 to 40 percent, depending on the investment terms and timeframe.

6.     After initially permitting investors to send money and receive promised returns in their own names, **SANJAY SINGH** and his co-conspirators began requesting that investors do so through companies that the investors had already incorporated or that, in some instances, **SINGH** and his co-conspirators had helped the investors to incorporate.  This change had the effect of concealing the source and nature of the funds flowing into and out of bank accounts held in RBL's name.

7.     RBL did not earn sufficient revenue from its trucking business to cover the costs of its operations, let alone the obligations to investors incurred through the investment programs. As

a result, **SANJAY SINGH** and his co-conspirators used new investor funds to pay existing investors promised returns, as is typical in a *Ponzi* scheme.

8.      While soliciting new investment for the *Ponzi* scheme, **SANJAY SINGH** and his co-conspirators also misappropriated investor funds for their own personal use and benefit and for the use and benefit of others. **SINGH** misappropriated millions of dollars of investor funds to pay for personal expenses including mortgage payments on his home and home renovations, as well as to fund multiple brokerage accounts and to provide collateral for stock trades on margin.

9.      To induce investors to send money to **SANJAY SINGH** and his co-conspirators, **SINGH** made, and caused others to make, materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, that:

<u>**Materially False Statements**</u>

(a)      promised investment returns were guaranteed;

(b)      RBL assumed the risks associated with trucking operations while investors received returns irrespective of those risks;

(c)      RBL paid more funds to investors than it took in from investors;

(d)      RBL was able to pay investors through its successful trucking business;

(e)      RBL used truck program investment principal, at least in part, to acquire a truck and trailer for the investor that RBL leased back from the investor to operate;

<u>**Concealment and Omission of Material Facts**</u>

(f)      RBL did not make a profit from its trucking business;

(g)      new RBL investor money was used to pay prior RBL investors;

(h)      **SANJAY SINGH** used RBL investor money to pay personal expenses including

mortgage payments on his home and home renovations; and

(i)      **SANJAY SINGH** used RBL investor money to fund multiple brokerage

accounts and to provide collateral for stock trades on margin.

10.    Based on these materially false and fraudulent statements and concealment and

omission of material facts to investors, among others, **SANJAY SINGH** and his co-conspirators

raised over $100 million in investor funds through in and around February 2023.

All in violation of Title 18, United States Code, Section 1349.

<u>**COUNTS 2-7**</u>
**Wire Fraud**
**(18 U.S.C. § 1343)**

1.      The General Allegations section of this Indictment is realleged and incorporated by

reference.

2.      From in or around January 2020, and continuing through the date of this Indictment,

in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**SANJAY SINGH,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to

defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, knowing that the pretenses, representations, and promises were

false and fraudulent when made, and for the purpose of executing such scheme and artifice to

defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce

by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation

of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by: (a) causing individuals and corporations to invest in RBL based on materially false and fraudulent statements and concealment and omission of material facts; and (b) using investor funds to make payments to earlier investors in RBL, for the defendant's and his accomplices' personal use and benefit, for the use and benefit of others, and to further the scheme and artifice.

## THE SCHEME AND ARTIFICE

4.     Paragraphs 4 through 10 of the Manner and Means Section of Count 1 of this Indictment are realleged and incorporated by reference as a description of the scheme and artifice.

## USE OF THE WIRES

5.     On or about the dates below, the defendant, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, did transmit and cause to be transmitted by wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, as more particularly described below:

| Count | Approximate Date | Description of Wire |
|-------|------------------|---------------------|
| 2 | November 8, 2021 | Interstate wire transfer of approximately $35,000 from K.H.C.'s JPMorgan Chase Bank account to RBL's Bank of America account ending in 6001. |
| 3 | April 29, 2022 | Interstate wire transfer on behalf of P.W. of approximately $35,000 from J.W.'s JPMorgan Chase Bank account to RBL's Bank of America account ending in 6001. |

| Count | Approximate Date | Description of Wire |
|-------|------------------|---------------------|
| 4 | August 4, 2022 | Interstate wire transfer of approximately $15,000 from D.J.'s Capital One Bank account to RBL's Bank of America account ending in 6001. |
| 5 | December 29, 2022 | Interstate wire transfer of approximately $100,000 from B.M.'s Bank of America account to RBL's Wells Fargo Bank account ending in 5094. |
| 6 | January 26, 2023 | Interstate wire transfer of approximately $155,000 from M.J.J.D's and W.J.'s Bank of America account to RBL's Wells Fargo Bank account ending in 5094. |
| 7 | February 14, 2023 | Interstate wire transfer of approximately $50,000 from K.A.'s State Employees Credit Union account to RBL's Wells Fargo Bank account ending in 5094. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 8
### Engaging in Transactions in Unlawful Proceeds
### (18 U.S.C. § 1957)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference.

2.     On or about April 26, 2022, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**SANJAY SINGH,**

did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to wit: a wire

transfer of approximately $250,000 from RBL's Citibank account ending in 4380 to the defendant's Bank of America account ending in 2459.

It is further alleged that the specified unlawful activity was wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))
### (18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **SANJAY SINGH**, has an interest.

2.      Upon conviction of Title 18, United States Code, Sections 1349 or 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following: real property associated with the following identifiers:

(a)     Folio Number 484226-00-0340 in Broward County, Florida;

(b)     Folio Number 484226-00-0350 in Broward County, Florida;

(c)     Folio Number 484226-00-0360 in Broward County, Florida;

    (d)     Folio Number 484226-00-0370 in Broward County, Florida;

    (e)     Folio Number 484226-06-0010 in Broward County, Florida;

    5.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c)

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
KIRAN N. BHAT
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

SANJAY SINGH,

_____/
                Defendant.

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☒ FTL     ☐ WPB

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No _____
    List language and/or dialect: _____

4.  This case will take __15__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                (Check only one)
    I    ☐ 0 to 5 days              ☐ Petty
    II   ☐ 6 to 10 days             ☐ Minor
    III  ☒ 11 to 20 days            ☐ Misdemeanor
    IV   ☐ 21 to 60 days            ☒ Felony
    V    ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No _____
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) No _____
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No _____
    If yes, Judge _____ Case No. _____
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No _____
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No _____
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No _____
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No _____

By: _____
    Kiran N. Bhat
    Assistant United States Attorney
    FL Bar No.   1008370

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   SANJAY SINGH

**Case No**:

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or twice the gross grain or loss, whichever is greatest

Counts #: 2-7

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 years per count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years per count
* **Max. Fine:** $250,000 or twice the gross grain or loss, whichever is greatest, per count

Count #: 8

Engaging in Transactions in Unlawful Proceeds

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000, or twice the value of the property involved, whichever is greater

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**