UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60117-CR-LEIBOWITZ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SANJAY SINGH,

    Defendant.
_____/

## UNOPPOSED MOTION TO CONTINUE TRIAL

Mr. Singh, by and through undersigned counsel, respectfully moves this Court to continue the trial, currently set for October 7, 2024, to approximately January, 2025. Due to recent representations by the government, as well as the multitude of outstanding issues, this case is not ready to proceed to trial on October 7, 2024. The government does not oppose the continuance, but "request[s] a ruling prior to Friday as to avoid disturbing other trial related deadlines." In support of the motion, Mr. Singh states as follows:

1. This case was transferred to Your Honor on March 8, 2024. [ECF No. 73].

2. On April 26, 2024, the parties filed a Joint Status Report detailing the state of discovery. [ECF No. 91]. At that time, the government had made seven discovery productions, and expected to produce an additional two electronic devices. *See id.*

1

3. The Court held a status conference on April 29, 2024, at which the Court set a status conference for June 17, 2024 to discuss the state of the government's efforts to produce the remaining electronic devices. [ECF No. 92]. On that date, the Court also set a deadline for "[a]ll Rule 16 discovery" to be produced by **May 10, 2024.** *See id.* In addition, the Court reset the deadline for pre-trial motions and motions in limine (with the exception of motions related to the as-yet unproduced electronic devices) for **June 10, 2024**. *See id.*

4. On June 10, 2024, in compliance with the Court's Order, the defense filed: (1) a motion for disclosure of jury selection records; (2) a motion for an early juror questionnaire and attorney conducted voir dire; (3) a motion in limine to exclude evidence and argument related to the parallel SEC action and post-receivership losses; (4) a motion to strike surplusage from the indictment; (5) an omnibus motion in limine; and (6) a motion for bill of particulars. [ECF Nos. 102–106]. The government filed no pretrial motions.

5. On June 20, 2024, in anticipation of the next status conference, the parties filed an additional Joint Status Report. [ECF No. 110]. Because the government had filed no motions related to the presentation of its evidence at trial, the defense requested the disclosure of the government's exhibit and witness list thirty days before trial, which the government opposed. *See id.* ¶ 5. The defense also requested the opportunity to file additional motions in limine related to the five electronic devices that were recently produced. *See id.* ¶ 4. The government took no position regarding motions in limine. *See id.*

6.      On June 27, 2024, this Court entered a scheduling order setting trial for **October 7, 2024**. [ECF No. 117]. In that Order, the Court also reset the deadline for all motions in limine to **September 5, 2024.** The Court granted the government's request to turn over exhibits and witness lists on **September 27, 2024**, ten days before the trial.

7.      The Court held a hearing on the defense's motions in limine on July 24, 2024. [ECF No. 131] Regarding the motion to preclude the government from introducing any evidence from the SEC case, the Court ruled that the government would not be permitted to reference the SEC case or call any witnesses from the SEC, but that the Court expected briefing from the government regarding how evidence from the SEC case would be presented. *See* [ECF No. 131] at 9:20–25 ("That's why I long ago set certain dates so that the parties are going to have a chance to proffer to the Court this is how we would like things summarized to the jury after voir dire, this is how the government intends for this witness to – you know, this happens all the time where witnesses say things in analogous cases like in a prior proceeding.").

8.      In ruling on the defense's motion to exclude post-receivership losses, the Court stated that the government is "attuned to these issues, because there may be redaction and presentation issues because you don't want the imprimatur of Judge Singhal to come into the case." *Id.* at 15:1–3. The Court continued, on this same point, by stating that "There's a key date coming for kind of a motions deadline of September the 5th. There's at least one more conference that is on the books for

3

September the 19th. . . . I guess what I would say is, is that that September 5th date, there's going to be a lot of work by the excellent attorneys in this case to move in limine because you're going to have to signal to the Court if you want clean rulings and not risk being shut down in front of a jury." *Id.* at 16:22–17:1.

9. At the hearing, the government then transitioned to discussing how they intended to call the forensic accountants hired by the SEC as "Rule 1006 summary witnesses." In response, the Court stated that "That's an example where I think that, and the parties will speak to each other, redaction, couching presentation, it is quite easy for this court to envision how such witnesses could present themselves. . . . You'll work with each other. If you disagree, you'll let me know." *See id.* at 21:15–20.

10. In discussing the defense's motion in limine to preclude argument from counsel regarding racial targeting, the Court stated that "I'm going to again say, this is why we have these hearings, if the government wants to open on the "T" word, they're going to have to in a motion in limine affirmatively say this is why we get to open on it." *See id.* at 28:9–14. The Court went on to state that "I'm going to let you wait for your motion in limine. If you want to respond now, you know, I think Ms. Becker's motion reduces to the following. If they don't have evidence or they don't proffer in advance evidence for it, the "T" word, "Targeting," is an explosive word. It's different than a witness coming in and putting out the fact that 90 percent of the investors come from a certain part of Miami, right?" *See id.* at 28:18–25. The government responded "we will put forward, Your Honor, with the specific witnesses

4

so that Your Honor can make an educated ruling beforehand. We're not going to argue targeting unless we're careful and that Your Honor allows it through a specific order." *Id.* at 29:20–24.

11. In discussing the defense's motion for a bill of particulars, the Court stated to the government that "I would expect the government by September the 5th to be briefing the Court on, for instance, is a statement in this case coming in as an exception to the hearsay rule as a coconspirator statement or is it coming in as an agent of a party-opponent and RBL. That kind of an affirmative motion in limine for various statements will by definition have to say things like this is who the ccs are, this is who the agents are." *See id.* at 41:17–24. As the Court explained: "At that point, one week before [the government] file their motions in limine seeking to give advance notice to his Court and the defense of what they intend to get in the case via statements and why it defeats the hearsay rule, it will allow – because its one week prior, it will allow the defendant to have the universe of agents." *See* (DE 131 at 45:16–21).

12. At the conclusion of the hearing on the motion for a bill of particulars, the Court ordered the government to provide to the defense a list of known co-conspirators by August 29th.

13. The government provided the names of the co-conspirators four days late. *See* [ECF No. 132]. The defense's deadline for filing pre-trial motions was then continued to **September 9, 2024**, due to the government's late disclosure of its list of co-conspirators**.** [ECF No. 132].

5

14. Despite the Court requesting affirmative motions in limine or briefing from the government concerning its intended presentation of evidence related to the SEC case, the court-appointed receiver, the forensic accountants, post-receivership losses, racial targeting, and statements by co-conspirators or agents, the government did not file any motions in limine by the September 5, 2024, deadline.

15. At the September 19, 2024, pretrial conference, the government informed the Court and the defense—for the first time—that it intends to introduce "80-90%" of its evidence through the receiver appointed in the parallel SEC case, and that it intends to introduce "lay opinion testimony" from both that receiver and its forensic accountant regarding pre-receivership RBL matters. Mr. Singh filed a motion in limine regarding both issues [ECF No. 140], but that motion will not ripen until after trial is currently scheduled to begin.

16. The government's continued failure to clarify how it intends to present its case at trial—such that critical evidentiary rulings can be made prior to trial—became clearer still when it filed its response to Mr. Singh's most recent motion in limine. *See* [ECF No. 141]. Recall that this Court explicitly ordered the government to file an affirmative motion in limine regarding the issue of Fed. R. Evid. 801(d)(2)(D) and (d)(2)(E) at the July 24th hearing. The Court made clear that it expected that motion to include specific statements and the names of the declarants. *See* [ECF No. 131] at 41:17–24 ("I would expect the government by September the 5th to be briefing the Court on, for instance, is a statement in this case coming in as an exception to the hearsay rule as a coconspirator statement or is it coming in as

6

an agent of a party-opponent and RBL. That kind of an affirmative motion in limine for various statements will by definition have to say things like this is who the ccs are, this is who the agents are."); *id.* at 45:16–21 ("At that point, one week before [the government] file their motions in limine seeking to give advance notice to his Court and the defense of what they intend to get in the case via statements and why it defeats the hearsay rule, it will allow – because its one week prior, it will allow the defendant to have the universe of agents."). When the government failed to comply, the defense—in an effort to synthesize the issues disputed at trial—filed a motion to exclude all co-conspirator statements. [ECF No. 136]. At the pre-trial conference held last week, the Court again asked the government to specifically brief this issue.

      17.     The government finally briefed the issue on September 23, 2024. [ECF No. 141]. Despite the Court's repeated and explicit requests, the government's response does not identify *a single statement* it intends to introduce under either Fed. R. Evid. 801(d)(2)(D) or (d)(2)(E). Instead, the government takes the position—without providing examples—that every employee is subject to those hearsay exceptions by virtue of their employment at RBL, and that every statement made by every one of those employees was necessarily made within the scope of that relationship or is non-hearsay. *See id.* at 10–11. The government does not attach to its response any evidence from which the Court (or the defense) could verify its assertions.

7

18. The government did not file any additional motions regarding the pending issues in the case, despite indicating at the last pre-trial conference that it had a set of pocket briefs it intended to file.

19. Despite the Court setting a firm deadline for the close of discovery on May 10, 2024, the government has made eight disclosures since that time. Most recently, on September 24, 2024, the government produced another batch of documents, totaling more than 2,400 pages. These documents include both new categories of information and documents that have apparently been in the government's possession for months, but were only produced on the eve of trial.

20. Put simply: this case is not ready for trial. The outstanding issues— related to: (1) which statements may be introduced under the co-conspirator exception to the hearsay rules; (2) the scope of the receiver's testimony; (3) the receiver's ability to introduce every and any RBL record; (4) the scope of the receiver's accountant's testimony; (5) the admissibility of evidence related to racial targeting; (6) the presentation of "post-receivership losses"; and (7) newly produced and potentially outstanding discovery—are simply too weighty to handle in the context of a live trial.

21. Justice Oliver Wendell Holmes once stated that, "Men must turn square corners when they deal with the Government." *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920). The government, likewise, must turn square corners when it seeks to use its power to deprive a man of his liberty. Yet, since this case was transferred to Your Honor, the government has failed to comply with *a*

*single* deadline ordered by the Court.  Despite repeated requests from both the Court and the defense to brief how they intend to introduce their evidence in this case, the government has failed to file a single affirmative motion in limine.  Instead, the government used the most recent pre-trial conference to inform both the Court and the defense that its entire case—90% of its evidence and opinion testimony regarding the existence of a Ponzi scheme—hinges on the testimony of two witnesses who were not involved with RBL operations during a single day of the conspiracy period.

22.    The defense has been doing its best to file pre-trial motions to synthesize the issues which will be disputed at trial.  But due to the government's failure to meaningfully engage the critical issues in this case, the defense is now in a position where it is unable provide effective representation to Mr. Singh if the case proceeds to trial on October 7, 2024.

23.    Accordingly, the defense requests that this Court continue trial in this matter by approximately three months.  In addition, because the government has failed to comply with the Court's request for pre-trial briefing, the defense requests that the Court issue the following deadlines in its scheduling order:

    (i).    A firm deadline for the end of the discovery period.

    (ii).    The government's disclosure of exhibit and witness lists thirty days before trial, with the defense's disclosure of the same three days thereafter.

    (iii).    The government's disclosure of which of its exhibits it intends to introduce through the receiver.

(iv). An evidentiary hearing attended by the receiver and its accountants so the Court can determine:

- Whether the receiver can satisfy the Fed. R. Evid. 803(6) requirements for each era of RBL's operations;
- Whether the scope of the receiver's testimony qualifies as expert testimony;
- Whether the scope of the receiver's testimony is based on firsthand knowledge;
- Whether the scope of the accountant's testimony qualifies as expert testimony;
- Whether the government can satisfy the requirements of Fed. R. Evid. 801(d)(2)(D) or (d)(2)(E) with respect to particular statements by former employees of RBL or alleged coconspirators of Mr. Singh.

24. Mr. Singh agrees to the exclusion of time from the speedy trial period of the time from the filing of this motion to the new trial date in 2025.

25. This motion is filed in good faith and will not cause undue delay.

26. The government does not oppose the continuance of the trial date. The defense is awaiting a response from the government regarding the additional proposed deadlines detailed in paragraph 23.

WHEREFORE, for the reasons set forth above, Mr. Singh respectfully requests that this Court reset trial in this matter no earlier than January 2025.

Respectfully submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By: /s/ *Abigail Becker*
Abigail Becker
Assistant Federal Public Defender
Florida Bar No.: 72284
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: (305) 530-7000
E-mail: abigail_becker@fd.org

By: /s/ *Victor Van Dyke*
Victor Van Dyke
Assistant Federal Public Defender
Florida Special A No.: A5503021
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
E-mail: victor_vandyke @fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: /s/ *Victor Van Dyke*