UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 23-60117-CR-LEIBOWITZ

UNITED STATES OF AMERICA

v.

SANJAY SINGH,

      Defendant.

_____/

## RESPONSE TO DEFENDANT'S FOURTH MOTION TO CONTINUE TRIAL

The Government is ready to proceed to trial on October 7th, and while it does not oppose the Defendant's fourth request for continuance (DE 146), the Government does take issue with the many excuses and inaccurate statements the Defense uses to support its requested trial delay. First, there are no pending legal disputes that justify a continuance as the Court has already ruled on the claimed issues or the issues have already been sufficiently briefed. Next, the Defense has the Government's exhibit list, all of its marked trial exhibits, summary charts, the Government's witness list, and witness Jencks Act material. All discovery has been produced and anything recently delivered was either provided through recent witness interviews or "clean up" trial subpoena. Finally, this most recent continuance motion is nothing more than a delay tactic by the Defendant to seek a trial advantage by using all of the Government's recent exhibits and witness trial disclosures.

## FACTS

From the beginning of RBL's operations in 2020 to the end, Defendant Sanjay Singh's corporation made approximately $17.5 million in trucking revenue, with $44 million in operating expenses. Thus, Defendant Singh's RBL trucking business had at least $26.5 million in net losses. During that same period, RBL raised approximately $159 million from over 1,600 individual

investors, with $105 million paid back to this same pool of people from the only source remaining: investor money collected by Singh.  So, Singh used new RBL investor money to pay prior RBL investors because there was zero other source of revenue.   From that same pool of RBL investor money, Defendant Singh transferred many millions of dollars to stock daytrading accounts and lost more than $8 million in speculative stock purchases and sales.  In total, Defendant Singh transferred more than $13 million in RBL investor money to insiders, including himself, his wife, relatives, and others.  The bank records, trading records, and internal RBL books and records show well over $50 million in total RBL investor/victim losses.

As the Government wrote in its July 5, 2024 paper (DE 119), midway through his three-plus year Ponzi fraud scheme, Defendant Singh, in a November 2022 video presentation, told his investors: "Just enjoy the money and let us do our job.  . . .  Somebody else telling you oh this may be a scam. This is not a scam. This is a fully functional, fundamentally solid business, where we work hard and generate revenue. . . . This is not a scheme, this is a fundamentally strong company." During his Royal Bengal Logistics ("RBL") trucking "business," several investors, lenders, and even his own employees suspected Singh was operating a Ponzi fraud scheme.  And, of course, he was.  With full control of the inflow and outflow of investor money, as well as the scant trickle of actual revenue, the extent of Singh's massive Ponzi wire fraud scheme was not known until U.S. District Court Judge Singhal ordered Singh to stop raising money from RBL investors and appointed Paul Lopez and Jennifer Wahba as Receiver's over the facade of RBL.

As further explained in the same July 5, 2024 filing, the Government placed the Defendant on Notice:  "However, the only evidence pertaining to other litigation that the government intends to introduce at trial is testimony by the court-appointed Receiver and his staff, including the Court-appointed forensic accountant, as well as lawsuits tied to the RBL business. **Because the**

**government anticipates the court-appointed Receiver and their forensic accountant to testify at trial regarding internal records and bank records**, that evidence is not irrelevant, does not violate the Federal Rules of Evidence, and should not be excluded." *Id*. at 8 (emphasis added). Later, at an in-person, pretrial meeting with Defense counsel at their Offices in Miami, the two government attorneys, again, explained to counsel that Paul Lopez, Esq., who the prosecutors suggested to refer to as "manager" or "new CEO" would testify about the books and records that he and his staff personally seized and examined, and that the majority of the internal books and records, as well as bank accounts obtained by him and his staff (as well as subpoenaed by his attorney, the U.S. Grand Jury, and State of Florida) should and could be moved into evidence through Paul Lopez, Esq. at trial.  The Defense attorneys sat quietly, and offered no response to the idea.  They gave zero input on this suggestion.  Now, nearly three months after it received notice, the Defense seek a continuance of trial, partially using this "issue" as a means for justification.

### ARGUMENT

**There are No Outstanding Legal Issues Meriting a Continuance**

    **Ponzi Scheme**

On June 10, 2024, the Defense tried to exclude all references to the words "Ponzi" or "Ponzi scheme" during the trial.  DE 105  The government responded in opposition (DE 119 ) and the Court ruled: "And they will be permitted, if they know and if the witness otherwise satisfies the rules of evidence, to say to a proper question what I see perhaps from these entries is moneys in and moneys out. And a summary witness would be allowed to use the term 'Ponzi scheme' and define it."  DE 131, Trans. at pg. 23.  Not content with this Court's ruling, the Defense filed a motion for reconsideration, veiled under a different name (DE 136).  There, they argued again,

3

"Mr. Singh requests the Court preclude the government from introducing any opinion testimony at trial as to whether Mr. Singh or his company, Royal Bengal Logistics ("RBL") was operating a Ponzi scheme ". *Id*. at 2.  At the last pre-trial conference, on September 19, 2024, before the government filed its response in opposition to this second Defense attempt, the Court ruled again in the government's favor:

> I did not say that the word "ponzi scheme" cannot be stated in evidence. It can. Ponzi scheme can be stated.  It is a term that is well-recognized in the law, including Eleventh Circuit case law. It has a specific definition.  A person like a forensic accountant could see new money coming in to pay old investors. And if the question was, What do you describe that as? Well, that's what's known as a ponzi scheme. That's not opinion testimony, and I'll tell you why, because that is a term that can be defined and subject to cross. Okay.  You would have all the cross that I know you're going to have in this trial about why this is not a ponzi scheme in certain respects on that person so, Ms. Becker, I'm doing my level best -- even though you only recently filed it -- I will hear the Government if they put anything else in. I'm doing my best to show you there will be no opinion testimony in this case. But that last one that's not an expert opinion if I'm on the stand and I call something a term of art, I'm allowed to say it and you'll define it.
>
> * * *
>
> If a victim testifies in their all five senses and they say something like, at that point, I thought he was using my money to pay others, I thought that was like a ponzi scheme at that point, that's not expert opinion. That's a witness that is subject to cross that is using a term of art in describing, so I'm glad you're asking, because I would allow that at this trial.

Trans. at pg 35-6 (DE 153).  Still unwilling to accept the Court's clear and repeated ruling on this issue, a few days later, the Defense filed its third bite at the apple, this time calling it a Motion in Limine to Limit the Scope of Testimony by the Receivers and Their Forensic Accountant. DE 140. This, a twenty-four-page motion (in clear violation of the Local Rules page limitation)[1] argued, again, that the forensic accountant's testimony of his review of the RBL books and bank records

---

[1] "Absent prior permission of the Court, neither a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages;" Rule 7.1(c)(2).

constitutes expert testimony. So, again, this Court must dispose of further issues raised by the Defense that it has already ruled upon (thrice). The government will soon file its response to the third attempt by the Defense to obtain a different result. Regardless, this is a clear and meritless attempt by the Defense for further delay.

**Records and Evidentiary Foundation**

The Defense claims that "90% of [the Government's] evidence and opinion testimony regarding the existence of a Ponzi Scheme hinges on the testimony of two witnesses . . ." Cont. Mot. at 9. This is incorrect. The Defense misses the mark. The government intends to *introduce* most of its evidence, RBL business records (investor contracts, investor spreadsheets, marketing material, bank records, paper handwritten notes of the Defendant found at RBL) through the best method possible: Paul Lopez, Esq., the new RBL manager (Receiver). As this Court knows, Paul Lopez, Esq. was commanded by the District Court to, among other things, "To take custody, control, and possession of all [RBL] Receivership Property and records relevant thereto from the Receivership Defendant; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto." Order at 4, attaches as Ex. 1 hereto. This, coupled with the case law cited by the Government in Government's Response to one of the many Defense motions (DE 141) at 7-8, as well as common sense, dictates that Paul Lopez, Esq. is the best witness to form the basis of the majority of the evidence's *introduction*.

The Government intends to lay an evidentiary foundation necessary for this to occur at trial. And, as the Government mentioned to the Court at the last pretrial conference, and supported by case law, the Government intends to ask this witness basic, rudimentary questions on the stand about RBL, including what he knows from being a manager, the books, records, QuickBooks, physical inspection of the trucking Offices and trucks in Florida and Texas, RBL's payroll,

5

business model, trucking revenue, trucking expenses, number of investors, amount of money raised from same, how investors were paid (source and amounts), and whether RBL was a viable going concern during its operation. Business assets and liabilities will also be a topic of inquiry on direct examination. Finally, the bank accounts obtained and the forensic accountant hired will be topics of direct examination by the Government of Paul Lopez, Esq.

The Fourth Defense Continuance Motion claims that the Government has not briefed this law. They say this is one of the "outstanding" issues and used this as an excuse to seek their trial delay. This is not accurate. As stated above, the Court has already ruled on this. And the Government did provide additional briefing on this. *See* (DE 141) at 7-8. Thus, Paul Lopez, Esq.'s testimony is valid and appropriate, and as the Court has already ruled, so is Soneet Kapila, the forensic accountant summary witness.

**RBL Employee's Out-of-Court Statements During Their Employment**

Another claimed Defense excuse for delay is this topic. The Government briefed this already. (DE 141) at 8-11. It is basic law. RBL employee statements are either not hearsay because they form the basis of fraud against Singh, the leader/organizer, CEO, President, and Founder of RBL, or they are not hearsay because they are party admissions: agents of RBL, made during their employment by Singh, while he was leader/organizer, CEO, President, and Founder. This has all been briefed and even the subject of a supplemental, new case, filed by the Government (DE 147). On September 25, 2024, the Eleventh Circuit Court of Appeals published, *United States v. Holland*, —F.4th——, 2024 WL 4284225 (11th Cir. Sept. 25, 2024), which, among other things, the Appeals Court held that coconspirators' statements need not be made by two or more criminals, merely that they had an agreement and that the statement may be used as long as it relates to that agreement. Moreover, the Court reiterated agency law under the Rules of Evidence, and wrote:

"the statements of an opposing party's agents and employees are treated the same way as the statements of that opposing party and thus are also not hearsay. Fed.R.Evid. 801(d)(2)(C)-(D)." No motion in limine is necessary, and no "pocket brief," is required to reiterate this blackletter law axiom.

### "Racial Targeting" Statements in Opening and in Case-in-Chief

Yet another red herring used by the Defense to garner its fourth trial continuance. The Government said it would not argue or say the words "racial targeting" in its opening. Sep. 19, 2024 H'rg. Trans at pg 57-8 ("I understood Your Honor's ruling, I'm not going to say that."). What more does the Defense wish for, other than a delay for an issue already raised twice and decided?[2]

### Recent Discovery

Finally, the discovery provided on September 24, 2024, should not impact the October 7 trial date. The discovery falls into two categories: (1) items turned over out of an abundance of caution that the Government does not intend to introduce at an October 7th trial, and (2) subpoenaed items meant to refresh prior subpoenas. Specifically, the Government turned over documents from a Robinhood trading account subpoena return belonging to Sheetal Singh, Bank of America subpoena returns of Rajini Singh's bank account[3], and subpoena returns for the construction company that upgraded the Defendant's home, all of which the Government does not intend to introduce at trial. The two remaining subpoena returns were Capital One bank subpoena

---

[2] "We're not going to argue targeting unless we're careful and that Your Honor allows it through a specific order." DE 131 at pg. 29. This statement was made by the Government at the July 24, 2024, then-pending motions hearing. The Government did NOT seek an order of court to allow the targeting. So, as mentioned, the Government will not argue targeting in its opening. If we intend to elicit this from a trial witness, we will ask the Court for permission first.

[3] The government subpoenaed this bank account in June of 2024 as we prepared for the hearing on the Defendant's request to eliminate indigency payments and learned that the Defendant maintained a Fidelity trading account post-indictment and attempted to investigate whether he transferred some of the proceeds from that account to his sister, Rajini Singh.

7

returns which updated a prior subpoena by providing ACH details for forty-three RBL ACH payments, and subpoena returns from Wex Inc. which updated their prior return with factoring records from January 2023 to June 2023.   The Government has been diligently preparing for trial, conducting witness interviews, responding to Defendant's motions, and receiving responses to trial subpoena.  We have not intentionally delayed producing any of the items, and, in fact, only intend to use a portion of same, listed on the Government's Exhibit List, filed last week.

## CONCLUSION

The Defense has the Government's exhibit list, exhibits, summary exhibits, witness list, and Jencks Act material. The Government is prepared to proceed to trial on October 7, 2024, and defers to this Court on whether to grant the Defendant's fourth request for further delay.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Robert F. Moore
Assistant United States Attorney
Court Id No. A5502488
99 N.E. 4th Street
Miami, FL 33132
Telephone: (305) 961-9411
Email: Robert.Moore@usdoj.gov

By: /s/Roger Cruz
ROGER CRUZ
Assisted United States Attorney
Florida Bar No. 157971
JLK Federal Justice Building
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: 305-961-9207
Facsimile: 305-536-4699
Email: roger.cruz@usdoj.gov

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system.

By: /s/ Roger Cruz
Assistant United States Attorney