UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60117-CR-LEIBOWITZ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SANJAY SINGH,

    Defendant.
_____/

**DEFENDANT'S TRIAL BRIEF REGARDING
<u>ADMISSIBILITY OF QUICKBOOKS DOCUMENTS</u>**

The Defendant, Sanjay Singh, respectfully submits this trial brief regarding the admissibility of various exhibits the government wishes to introduce, which include records exported from the online accounting software, QuickBooks. Mr. Singh submits that, for the reasons detailed below, these records fall outside the business records exception to the rule against hearsay and should be excluded. The exhibits in issue include the following Government Exhibits: 119-21, 119-25 through 119-27, 119-41 through 119-57, and 119-60.

    **I.    The Testimony**

On October 25, 2024, the Court held a hearing regarding, among other issues, the admissibility of various QuickBooks records the government seeks to introduce. At that hearing, the government proffered a foundation to admit the exhibits in dispute, including the testimony of Paul Lopez, one of the receivers appointed to assume control of Royal Bengal Logistics (RBL) on June 21, 2023, in the parallel SEC

proceeding, Case No. 23-CV-61179-DSL. The government seeks to introduce the QuickBooks records through Mr. Lopez as a records custodian.

On direct examination, Mr. Lopez gave the following testimony regarding the QuickBooks records. Following his appointment as the receiver, Mr. Lopez spoke with RBL's director of human resources, Jeremy Perkins. Transcript of Oct. 25, 2024, hearing (attached hereto as Exhibit 1) (hereinafter "Tr.") at 20. Mr. Perkins identified Sheetal Singh as RBL's director of finance. Tr. at 20-21. Mr. Lopez contacted Ms. Singh, who advised Mr. Lopez that RBL kept its financial records exclusively in QuickBooks, that such records were stored "in the cloud," and that a password was required to gain access to the records. (Tr. at 21-22, 26). Mr. Lopez learned that Ms. Singh, Sanjay Singh, and perhaps others had access to the QuickBooks records. (Tr. at 23). Ms. Singh provided Mr. Lopez the password to access the records. (Tr. at 24).

After gaining access to the QuickBooks records, Mr. Lopez and his team noticed that the QuickBooks entries were incomplete, insofar as there were no records after January 31, 2023. (Tr. at 27).

Mr. Lopez also learned within the first day or two following his appointment that RBL was working with an outside accounting firm, Forrest Robinson. (Tr. at 24). Mr. Lopez or another member of his team spoke with someone at Forrest Robinson, who confirmed that RBL's financial records were exclusively kept in QuickBooks. (Tr. at 26).

On cross examination, Mr. Lopez provided the following information. In addition to Ms. Singh and Mr. Singh, other employees at RBL may have had access

to the QuickBooks. (Tr. at 33). Additionally, the accountants at Forrest Robinson had access to the QuickBooks. (Tr. at 33).

Mr. Lopez spoke with Ms. Singh concerning RBL's use of QuickBooks. Ms. Singh explained to Mr. Lopez that:

> [S]he was the person who oversaw the finances of the company, and that either she or perhaps someone under her direction kept track of the company's finances and uploaded the information into the QuickBooks program. But I don't know physically how she would have done that.

(Tr. at 34). When asked whether Mr. Lopez verified that the entries into QuickBooks were made at or near the time of the transactions that they record, Mr. Lopez answered, "Now as far as if they were made actually at or about the time, I don't know that." (Tr. at 35). Mr. Lopez did not discuss with Ms. Singh whether the QuickBooks entries were made at or near the time of the events or transactions they record. (Tr. at 35).

With respect to the accountants at Forrest Robinson, Mr. Lopez testified that he did not know who at that firm was working on RBL's account or who at the firm had access to the QuickBooks; he came to learn, however, that Forrest Robinson accountants had a portal through which to access the QuickBooks accounts. (Tr. at 35). The Forrest Robinson accountants would categorize or re-categorize existing entries in the QuickBooks accounts. (Tr. at 36-37). Mr. Lopez testified that if the Forrest Robinson accountants "had questions about entries, they would then reach out to RBL – presumably Ms. Singh, who is director of finance – and they would have some back-and-forth communication. But I don't know specifically how they would have gone through that process." (Tr. at 37). Mr. Lopez could not comment on whether

3

the adjustments made to QuickBooks entries by Forrest Robinson accountants were made close in time to the transactions they reflected. (Tr. at 37).

Mr. Lopez agreed that, in his capacity as the receiver for RBL, he had filed a complaint against Forrest Robinson for negligence; Mr. Lopez alleged in the complaint that after RBL stopped making entries into the QuickBooks, Forrest Robinson made over 13,000 QuickBooks entries. (Tr. at 39). Mr. Lopez did not have information regarding the process by which those 13,000 entries or adjustments were made. (Tr. at 39).

## II. The Law

Federal Rule of Evidence 803(6) provides the "business records" exception to the general rule against hearsay. It provides that a record may be admitted if:

A. The record was made at or near the time by – or from information transmitted by – someone with knowledge;

B. The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling whether or not for profit;

C. Making the record was a regular practice of that activity;

D. All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

E. The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). "The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d

4

375 (11th Cir. 1996). While Rule 803 does not demand that the person who kept the record or had supervision over its preparation testify, the witness must be knowledgeable about the procedures used to create the alleged business record. *See United States v. Garnett*, 122 F.3d 1016, 1018-19 (11th Cir. 1997) ("[Rule] 803(6) requires the testimony of a custodian or other qualified witness *who can explain the record-keeping procedure utilized*." (emphasis added)).

When more than one person is involved in the making of a record, in order for this exception to apply, all persons involved in the process must be acting in the regular course of business—"otherwise an essential link in the trustworthiness chain is missing." *T. Harris Young & Assoc., Inc. v. Marquette Elec.*, 931 F.2d 816, 828 (11th Cir. 1991). While a document prepared by a third party may qualify as another business entity's business record under Rule 803(6), the proponent must establish that the business entity integrated the third-party record into its records, relied upon it in its day-to-day operations, and must also satisfy the other requirements of Rule 803(6). *See, e.g.*, *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) ("Several other courts have held that a record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied…. We agree with these courts…."); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) ("[A] record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule (and thus is admissible if all the other requirements are satisfied.").

### III. The QuickBooks Records Do Not Meet the Requirements of Fed. R. Evid. 803(6)

The government, as the proponent of the evidence in dispute, cannot establish that the QuickBooks records meet the requirements of Rule 803(6) and accordingly, the records must be excluded.

First, it is clear from Mr. Lopez's testimony that more than one entity was involved in the creation of the QuickBooks records in question. Employees at RBL, including but not necessarily limited to Sheetal Singh, had access to the QuickBooks, and either Ms. Singh or someone under her direction uploaded the company's financial information into the program up until approximately January 31, 2023, at which time RBL discontinued its use of QuickBooks. (Tr. at 33-34). Additionally, employees at the accounting firm Forrest Robinson had access to the QuickBooks. Forrest Robinson employees made some 13,000 entries or adjustments to the QuickBooks in the time after RBL stopped making entries and before the appointment of the receivers—essentially between January 31, 2023, and June 21, 2023. (Tr. at 39). All these entries were necessarily retrospective.

The QuickBooks records in question, are thus not simply a record of RBL; they also include thousands of entries created by a third party. Accordingly, the government, as the proponent of the records, must satisfy the requirements of Rule 803(6) with respect to both of these entities. The government has failed to establish the requirements as to either RBL's or Forrest Robinson's entries in the QuickBooks records. Mr. Singh addresses each, in turn.

First, Mr. Lopez's testimony was insufficient to establish that RBL made entries into QuickBooks in the course of a regularly conducted activity, that the record was made at or near the time of the events recorded, or that making the record was a regular practice of that activity. Mr. Lopez testified Ms. Singh told him that RBL used QuickBooks, that she was the person who oversaw the finances, and that either she or someone under her direction uploaded the company's financial information into QuickBooks. (Tr. at 34). He provided no information as to the sources of the information Ms. Singh relied upon to make the entries, the process by which the information was added, or the timing of the same. Specifically, Mr. Lopez testified that he did not know how Ms. Singh made entries into the QuickBooks. (Tr. at 34) ("That's a difficult question to answer because I don't know how she made entries into the QuickBooks."). With respect to when the entries were made, Mr. Lopez testified, "Now, as far as if they were made actually at or about the time, I don't know that." (Tr. at 35). When asked if he ever discussed with Ms. Singh whether she made QuickBooks entries at or around the time of the events recorded, Mr. Lopez responded, "No." (Tr. at 35).

Mr. Lopez's testimony is insufficient to show that the entries RBL made in the QuickBooks meet the requirements of Rule 803(6). He lacks knowledge about the procedure used to create the records, and he has no information as to whether the records were made at or near the time of the events they record. *See United States v. Ahmed*, 73 F.4th 1363, 1383 (11th Cir. 2023) (no abuse of discretion for district court to exclude records where witness testified he did not know how much time elapsed

7

between rendering services and creating invoices, "casting doubt on whether the records were 'made at or near the time…by someone with knowledge'").

The government also cannot establish that the QuickBooks records made by Forrest Robinson satisfy the requirements of Rule 803(6). The government seeks to introduce these records based solely on Mr. Lopez's testimony—there is no certification from Forrest Robinson that might satisfy the requirements of the Rule. And Mr. Lopez's testimony failed to establish that the Forrest Robinson entries were made by a person with knowledge at or near the time of the events recorded, or that the Forrest Robinson records were reliable.

First, Mr. Lopez could provide no information as to how Forrest Robinson made its 13,000 entries into the QuickBooks. When asked how Forrest Robinson made entries or adjustments to the QuickBooks, Mr. Lopez stated, "My understanding is that the way it worked was, you know, they had the portal, they had questions – if they had questions about entries, they would then reach out to RBL – presumably Ms. Singh, who is the director of finance – and they would have some back-and-forth communication. But I don't know specifically how they would have gone through that process." (Tr. at 37). This proffer does not adequately establish that the Forrest Robinson records were made by a person with personal knowledge of the records' contents. Mr. Lopez simply lacks information regarding the process by which Forrest Robinson acquired information from RBL. He presumed that Forrest Robinson obtained information from Ms. Singh, but a presumption is not sufficient. He expressly testified that he did not know the process by which Forrest Robinson made changes to the QuickBooks records. With this limited information, the government

8

cannot establish that a person with knowledge at Forrest Robinson made these records in the regular course of their business.

The government also cannot establish that Forrest Robinson's records were made at or near the time of the events recorded. When asked if he could state whether Forrest Robinson's adjustments were made "close in time to the transactions they reflected in the QuickBooks," Mr. Lopez's response was, "I can't – I can't comment on that." (Tr. at 38). Other testimony at the October 25, 2024, hearing, however, establishes that the Forrest Robinson entries were not made at or near the time of the events. Mr. Lopez testified that RBL stopped making QuickBooks entries around January 31, 2023, and *thereafter*, Forrest Robinson made some 13,000 changes to the records. (Tr. at 39). The changes Forrest Robinson made were, thus, necessarily retrospective and not made at or near the time of the events recorded.

The government has not and cannot establish that the QuickBooks records in question meet the requirements of Fed. R. Evid. 803(6). To be sure, Mr. Lopez need not have created the records himself, nor even have *firsthand* knowledge of the specific processes by which the documents in question were created. *See Bueno-Sierra*, 99 F.3d at 379. To establish that certain records fit within the business records exception, however, the proponent must establish, through a person knowledgeable about the procedures used to create the alleged business record, that the records were created in the regular course of business, by a person with knowledge, at or near the time of the events recorded. *Garnett*, 122 F.3d 1016, 1018-19. Mr. Lopez, the government's proposed records custodian, cannot establish these requirements with

9

respect to the QuickBooks records. The failure to meet these requirements undermines the records' fundamental reliability, and the records must be excluded.

                              Respectfully submitted,

                              HECTOR DOPICO
                              FEDERAL PUBLIC DEFENDER

By: */s/ Abigail Becker*
      Assistant Federal Public Defender
      Florida Bar No.: 72284
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130
      Tel: (305) 530-7000
      E-mail: abigail_becker@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on October 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                        By: */s/ Abigail Becker*