UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60117-CR-LEIBOWITZ

UNITED STATES OF AMERICA

vs.

SANJAY SINGH,

      **Defendant.**

_____/

**UNITED STATES' OPPOSITION TO DEFENDANT'S TRIAL BRIEF**

Sanjay Singh wants this Court to hold that his own company QuickBooks records—prepared by himself and other RBL officers and employees—are untrustworthy and cannot be used against him. It is Singh who is untrustworthy, not RBL's QuickBooks records. These QuickBooks records, later tied back to reliable bank records by the Court-ordered receiver and his accountant, are admissible for a number of alternative reasons. The QuickBooks records, created by Singh, his co-conspirators, or his employees, are party admissions. Independently, the QuickBooks records are admissible as business records created during the course of RBL's business. Finally, to the extent that the QuickBooks entries simply stopped in the months leading up to the unraveling of this Ponzi scheme, the absence of these business records are admissible as well.

**I.    The QuickBooks Records are Admissible as Person, Agent or Co-Conspirator Admissions.**

During the hearing on October 25th, the receiver testified that he spoke with Sheetal Singh for the first weeks after taking over Royal Bengal Logistic and that during that time she was still a current employee. They discussed her knowledge of the company's QuickBooks. The receiver testified that during those conversations Sheetal Singh stated, "that either she or somebody under her watch would have been responsible to make sure that those entries were made." Tr. 35. With

1

that information in mind, the analysis shifts to the admissibility of the statement based on her representation that the entries were made by her or some other agent/employee of Royal Bengal Logistics.

Any QuickBooks entries made by Singh himself are of course admissible as the statements of a part opponent under FRE 801(d)(2)(A). To the extent that Singh's wife (herself an RBL officer) made the QuickBooks entries, those records are admissible as either an agent or co-conspirator statement pursuant to FRE Rule 801(d)(2)(C) or (D). And to the extent that other RBL employees occasionally made entries, they are likewise admissible as an agent or employee admission pursuant to Rule 801(d)(2)(C) or (D). As the Court is aware, the QuickBooks database was taken over by the receiver and contained records corresponding to the time Singh ran the company. According to the receiver, the QuickBooks password was provided by Singh's wife, and an RBL employee said Singh also had the password. To the extent that Singh's wife or RBL employees made QuickBooks entries in his ongoing Ponzi scheme, "as those statements were made during and in furtherance of a joint venture that included an opposing party, the statements are admissible." *U.S. v. Holland*, 117 F.4th 1354, 1345 (11th Cir. 2024). Any database entries, whether by Singh, his wife, or an unidentified employee, are therefore admissible against Singh as party opponent or co-conspirator admissions.

Any adjusting journal entries in the QuickBooks made by Forrest Robinson are also admissible under Rule 801(d)(2)(D). As the receiver will testify, RBL hired Forrest Robinson to make what are known as "adjusting journal entries" in the RBL QuickBooks to certain financial entries made by RBL staff who did not know how to book the transactions. As discussed below, while the receiver has sued Forrest Robinson in Broward County state court, it is because the accounting firm was negligent in not alerting anyone to the fact that, based on the QuickBooks,

2

RBL was a Ponzi. Such an allegation does not undercut the plain fact that the Forrest Robinson QuickBooks entries "were made during and in furtherance of a joint venture that included an opposing party," *Holland, supra*, and are therefore admissible against Singh.

## II.     The QuickBooks Records Are Also Admissible as Business Records.

The QuickBooks are also admissible as a business record, pursuant to FRE 803(6). Singh's motion claims the QuickBooks are untrustworthy under FRE 803(6)(E), leaning heavily on what he paints as unreliable work of the accounting firm Forrest Robinson. Again, the receiver and his accountant verified that the QuickBooks tracked and were corroborated by the subpoenaed bank records. As the receiver stated during the hearing,

> "we go to the accountants and confirm that the accountants were actually using QuickBooks and the company was keeping the records through QuickBooks. But then also, importantly for us, was to have the bank records then put together, and then have KM help us in trying to test the data, right? Seeing dates of when deposits are being made, does that match up with what we're seeing in the QuickBooks. And everything that we got from KM corroborated that all of this information was accurate for purposes of just big picture, what was going on with the company from a financial standpoint." Tr. 46

This testimony refutes Singh's unreliability argument.

Singh also claims that, because the receiver and his accountant weren't peering over the shoulder of Singh, his wife, his employees, and Forrest Robinson as they made financial entries into QuickBooks, the entries were not "made at or near the time" by someone with knowledge for the purposes of FRE 803(6)(A). To the contrary, these accounting entries, even the adjusted entries made by Forrest Robinson, were made during the operation of RBL's Ponzi scheme and therefore fit the rule's timeliness requirement. *See Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC*), 781 F.3d 1262, 1268 (11th Cir. 2015) (a "testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation."). Further, any hypothetical time lag between the actual transaction and the entry into QuickBooks—which might give rise to

3

reliability concerns in other contexts—is mollified by the fact that the receiver corroborated the QuickBooks entries with the actual subpoenaed bank records. Further, even though receiver may not know every detail of Forrest Robinson's involvement with the QuickBooks, there's enough evidence to show that the "adjustments" made on the QuickBooks were made by someone with knowledge. *See Monoz v. Strahm Farms, Inc.*, 69 F.3d 501 (Fed. Cir. 1995) (witness testified that "it was a regular practice to send film to Kodak for processing and to receive developed slides with dated frames in return. He further testified that it was his regular practice to check the dates on the slides when he received them from Kodak and then subsequently file the slides in his office.); *See also United States v. Basey,* 613 F.2d 198, 201 n. 1 (9th Cir.1979) ("It is unimportant under Fed.R.Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."); *Saks Int'l, Inc. v. M/V Export Champion,* 817 F.2d 1011, 1013 (2d Cir.1987) (a regular practice of receiving information from another person obviates the need to identify that person). *United States v. Ruan*, 966 F.3d 1101 (11th Cir. 2020) ("The proponent must merely "establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity.") (quoting *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996)). Additionally, Lopez testified that "Forrest Robinson made over 13,000 QuickBooks entries on RBL's behalf…they put into a JA as ask the accountant" explaining that Forrest Robinson assisted with categorizing entries and did not make their own entries or alter the entries that Sheetal and her assistants entered. Tr. 39. The recategorization does not alter the reported information, which in this case is the financial entry itself, therefore the lack of specificity as to Forrest Robinson entry does not change the status of this document as a business record.

Singh's citation to *United States v. Ahmed*, 73 F.4th 1363, 1383 (11th Cir. 2023) does not help him.  First, Singh refers to a "witness" proffering business records. Notably, it was the **defendant** who proffered the records and therefore did not have party opponent hearsay exceptions available to him. Leaving that aside, the defendant in *Ahmed* wanted to admit purported promissory notes as business records even though he could not establish how they were created, and the FBI did not find the same type of documents in a business premises search warrant.  There was no indicia of reliability for the proffered promissory notes, as is the case with the bank records in our case, to substantiate the reliability of the purported business records.

### III. The Fact That RBL Had No QuickBooks Entries Between February 2023 and June 2023 is Classic FRE 803(7).

During the Friday, October 25th hearing, Lopez testified, "So there was information that was contained on the QuickBooks records, for sure. What stood out, however, was that as of at least January 31st of 2023, there were no records after January 31st of 2023." Tr. 35. The receiver and his accountant can also testify to this **absence** of RBL QuickBooks entries between February 2023 and June 2023, pursuant to FRE 803(7) (providing for testimony about the absence of a record of a regularly conducted activity).  While FRE 803(7) also has a provision that precludes the use of the rule in "circumstances that indicate a lack of trustworthiness," there is not a concern here for the reasons described above. Again, Mr. Lopez already verified when questioned by the Court that his accountant (Mr. Kapila) checked the QuickBooks against the bank records to ensure the QuickBooks were reliable.  Testimony that RBL had no QuickBooks for a nearly six-month period is probative of the fraud and permitted under FRE 803(7).

### IV. If Singh Crosses Mr. Lopez on the Forrest Robinson Lawsuit, He Will Open the Door to Testimony About Mr. Lopez's Role as the Court-Ordered Receiver.

Singh made plain in his motion that he will cross Mr. Lopez on the receiver's lawsuit

against the Forrest Robinson accounting firm in an attempt to shift blame for this *Ponzi* scheme from himself to the accounting firm. Such a strategy would be ill-advised given that the allegation in the receiver's lawsuit is that "Forrest Robinson did not take any steps to stop RBL and Mr. Singh from pilfering millions of dollars from RBL's investors." But, to the extent that Singh persists with such a cross, the Government of course should be entitled to elicit the complete story, namely, that the lawsuit was pursued as part of Mr. Lopez's role as a court-ordered receiver seeking to maximize recovery for the defrauded victims. If the Government is precluded from eliciting such facts, the jury will be left with the misimpression that Mr. Lopez was pursuing a lawsuit against Forrest Robinson in some type of business dispute for his own benefit.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   s/ *Robert F. Moore*
ROBERT F. MOORE
Assistant United States Attorney
Court ID No. A5502488
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9411
Robert.Moore@usdoj.gov

By: /s/Roger Cruz
Roger Cruz
Assisted United States Attorney
Florida Bar No. 157971
JLK Federal Justice Building
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: 305-961-9207
Facsimile: 305-536-4699
Email: roger.cruz@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 29, 2024, I electronically filed the foregoing document with the Clerk of the Court and counsel of record using CM/ECF.

*s// Robert F. Moore*
ROBERT F. MOORE
Assistant United States Attorney