UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-60117-DSL

UNITED STATES OF AMERICA

vs.

SANJAY SINGH,

Defendant.
_____/

## MOTION TO REMAND THE DEFENDANT

The United States, by and through undersigned counsel moves to remand the Defendant. On November 7, 2024, following a five-week trial, the defendant was found guilty of one count of conspiracy to commit wire fraud, six counts of substantive wire fraud, and one count of engaging in transactions in criminally derived property. Following the guilty verdict, the Defendant asked this Court to allow him to remain on bond pending sentencing. The Court appears to be inclined to grant the defendant a bond pending sentencing. It should not. The Government renews its motion for remand because the Court was unaware of material facts and circumstances that occurred before the guilty verdict. Simply put, the Defendant lied directly to the District Court during hearings in August and November and was alleged to have stolen funds from his employer while on bond.

The Court took the Defendant's request under advisement stating that he would entertain the bond with additional conditions provided by the Defendant in the forty-eight hours to follow. The Court indicated that the Defendant's daily appearance and compliance over the last year and a half pending trial were factors weighing in favor of the Defendant remaining on bond.

However, the Government asserts that the Defendant has not been compliant or honest with this Court over the last year and a half and this motion serves as notice to this Court of the Defendant's deception and false representations to the Court over that time. Additionally, the Defendant's current position is starkly different from his reality even a week ago, where he faced the possibility of a full acquittal, and had every reason to show up to Court to fight for that result. The same is true for the time-period after his arrest just over a year ago. Now, he has every reason to flee to avoid years of incarceration. As the Government's evidence showed during trial, he also has the means and sophistication to do so. Therefore, the Defendant's request for bond pending sentencing should be denied because he is an Overseas Citizen of India (OCI) with substantial familial and business ties to India, has the means and incentive to flee pending sentencing, and a history of deceiving this Court. Further, the Defendant now stands convicted of a scheme *premised* on widespread deception and his crime involved laundering of millions of dollars to bank accounts in India which is more than enough to sustain him if he does flee. Lastly, the Court stated that the Defendant has been compliant with his pretrial release conditions at the last court appearance. This is not so, as will be explained below. For reasons set forth below, the Defendant's motion should be denied.

## Legal Standard

The Bail Reform Act of 1984 imposes stringent restrictions on the availability of bail following a defendant's conviction. *See* 18 U.S.C. § 3143. The Bail Reform Act requires a district court to detain a convicted criminal who is awaiting sentencing unless he shows "by clear and convincing evidence" that he is not likely to flee or to pose a danger to others. 18 U.S.C. § 3143(a). *See also United States v. Ben-Ari*, 537 Fed. App'x 828, 831 (11th Cir. Sept. 5, 2013) (A district court "shall order" detention for a defendant found guilty of an offense who is awaiting sentencing

"unless the court finds by clear and convincing evidence that the person is not likely to flee."). In placing the burden on the defendant, Congress concluded that, "[o]nce guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal" and that "release of a criminal appellant into the community after conviction may undermine the deterrent effect of the criminal law." S. Rep. No. 98-147, at 53 (1983). The district court's factual findings under Section 3143 are afforded great deference and a circuit court reviews such findings for clear error. *See United States v. King*, 849 F.2d 485, 487 (11th Cir. 1988) (stating "we will not disturb the district court's purely factual findings [under the Bail Reform Act] unless such findings are clearly erroneous").

I. **Defendant Is a Clear Risk of Flight**

The Defendant bears the burden of proving by clear and convincing evidence that he does not pose a risk of flight. Here, the Defendant argues that he is not a flight risk because he appeared for all of his court appearances during the pendency of this litigation, however, that leaves several concerns unaddressed. First, the Defendant is a flight risk because he currently stands in a different posture from the seventeen months prior to yesterday's conviction. As stated by United States District Court Judge Roy Altman in *United States v. Grobman* when rejecting defense counsel's request that the defendant remain free on a pre-trial bond, "'things are different once you get convicted at trial. Because until that point, hope springs eternal in human beings. And now after that point, I think it's understandable that things may have changed." 460 F. Supp. 3d 1331, 1334 (S.D. Fla. 2020). The Defendant now stands convicted of the eight-count indictment with a guideline range of life imprisonment. As Judge Altman has explained, the "very real prospect" of spending this amount of time in prison "would give anyone second thoughts about staying put." *United States v. Lewis*, 19-60034-CR, 2020 WL 6262984, at *2 (S.D. Fla. Oct. 23, 2020)

3

*(citing United States v. Bonilla*, 388 F. App'x 78, 80 (2d Cir. 2010) (recognizing the self-evident proposition that a lengthy prison term "provides a strong incentive for a defendant to flee")).

Second, the defendant has "significant ties and travel to foreign countries weighing in favor of a finding that he [is] a flight risk." *United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017). 2017). *Kachkar* is instructive because there, as here, the defendant had lawful status in the United States and children living in South Florida. However, the Eleventh Circuit upheld detention pre- trial because the defendant had foreign citizenship, had extensive travel overseas, had access to funds overseas, and had engaged in a complex international fraud scheme and faced a lengthy guideline sentence. Here too, the defendant has extensive travel overseas, has OCI status in India (Exhibit 1), has access to assets overseas (in India), and faces a lengthy guideline sentence. Additionally, the Defendant is a pilot with both the means and incentive to flee the jurisdiction. The Defendant currently has several friends, family members, and business associates living in India as testified during the five-week trial. The Defendant also traveled out of the country four times in the last four years and two of those times the Defendant traveled to India. (Exhibit 2)[1.] These facts all lend themselves to the Defendant's risk of flight.

Finally, as it relates to the Defendant's risk of flight, the Defendant transmitted or caused to be transmitted $6,385,514.98 million dollars to people or companies in India during the three-year conspiracy and these seven figures in transfers that potentially still sit in India are more than enough to sustain him on the run. *Lewis*, 2020 WL 6262984, at *2 (citing *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fla. 2017) (acknowledging "that defendants with financial means to flee pose a serious risk of flight")).

---

[1] The Defendant's final trip was from Miami to India via Dubai.

4

Specifically, the Defendant transferred $489,705.00 to relatives in India under the payment description "family support" (Exhibit 3) and an additional $5,864,555.41 (Exhibit 4) to a company called Black Lion, owned by the Defendant's brother-in-law Cheetan Chavan.[2] The $489,705.00 "family support" payments remain unexplained and create a substantial pot of money with which the Defendant could sustain himself should he flee. As to the over $5 million dollars in payments to Black Lion, the Defendant may argue that these were legitimate business-related expenses, however, Black Lion's major role, as testified to at trial, was the creation of trailers which weren't functional for most of Royal Bengal Logistics' existence.  The Government remains unpersuaded that the $5 million dollars in payments to Singh's brother-in-law's company, Black Lion, are adequately explained as normal business expenses. Any remaining funds from those wires to India would also provide a source of funds to assist in the Defendant's flight. As such, the Defendant cannot prove by clear and convincing that he is not a risk of flight post-conviction.

## II. Danger to the Community

The Defendant engaged in significant deception in this case over the course of three years. A "pattern of deception," which involved "methodical and repetitive efforts to defraud and evade detection," indicates "that [he] would continue to pose a danger of further harm to the community if released." *United States v. Burke*, 2013 WL 5194138, at *1 (S.D. Fla. Sept. 17, 2013). Here, the government maintains, as supported by caselaw, that the Defendant's deception to his nearly 2000 victims is informative to this Court as to the continued danger that he poses to the community.

After the execution of the June 21, 2023, search warrant at Royal Bengal Logistics, and after the Defendant's arrest and indictment, the initiation of the SEC investigation, the appointment of the

---

[2] The Defendant transferred an additional $31,254.57 to two additional companies in India.

receivership, the freezing of the Defendant's assets, and the appointment of the Federal Public Defender based on the Defendant's claimed indigency, the Defendant traded approximately $90,000 dollars in stocks through two different trading accounts.

As demonstrated through the Court record, on August 4, 2023, the Defendant appeared in Court for an arraignment which was continued to August 18, 2023. DE 17. On that same date, the Defendant transferred $80,000 in three separate transactions into his Fidelity Trading Account. (See Exhibit 5). On August 11, 2023, the Defendant transferred $79,500 of that money to his sister's Bank of America account. On August 18, 2023, the Defendant appeared before Magistrate Judge Hunt and falsely represented himself as indigent inducing the appointment of the Federal Public Defender.  DE 22. But the Defendant's blatant misrepresentations about his indigency did not end there.

After Judge Hunt's appointment of the Federal Public Defender, the Defendant was queried on the record regarding his ability to retain counsel or make indigency payments by Chief Judge Altonaga. At that time, the Defendant represented that he was unable to afford counsel despite what Judge Altonaga articulated were outsized expenses for someone who could not afford counsel. At a hearing on November 27, 2023, Judge Altonaga questioned the veracity of the Defendant's claims of indigency stating, "I am hard-pressed to find that he is indigent.  He has got a home; he's got cars; he is working; he has got funds.  I know some of them are frozen, but he's got means of income, and I think the services of the public defender are reserved for the indigent and those who cannot afford counsel." (Exhibit 8). At that point, the Defendant failed to mention the $80,000 in wire transfers into and out of his Fidelity Trading Account just three months earlier. Not only that, just eight days later, the Defendant engaged in options trades on margin from a Trade Station

6

account with $8890.50 making three purchases of Navidia options as seen in the attached exhibit. (Exhibit 6).

Not only have courts found that lying to the court about a defendant's financial records constitutes perjury and is a violation of their bond conditions, courts in this district and others even regularly apply sentencing enhancement at time of sentencing if the government learns that the defendant lied about their financials at the pretrial setting. *See United States v. Ruff*, 79 F.3d 123, 124 (11th Cir. 1996); *see also*, *United States v. Douglas*, 784 F. App'x 676, 681 (11th Cir. 2019) (holding that courts can apply a two-level enhancement for obstruction of justice when defendants make false statements to obtain court-appointed counsel); *United States v. Brantley*, 596 F. App'x 780, 781 (11th Cir. 2015); *United States v. Hernandez-Ramirez*, 254 F.3d 841, 843 (9th Cir. 2001) (holding that false information in the defendant's financial affidavit was material because this information would tend to affect whether the magistrate judge found the defendant qualified for appointment of counsel); *United States v. Bartok*, 472 F. App'x 25, 27 (2d Cir. 2012) (holding that the revocation of the defendant's bond for perjury because the defendant lied to the magistrate court about his financial status in order to obtain court-appointed counsel warranted his detention). The boldness with which this Defendant is willing to deceive this Court is further evidence of his danger to the community. The Defendant's consistent patterns of deception established by the lies he told to his victims in this indictment and the lies that he has told this Court post-indictment all further that he is a danger to the community. Put simply, he cannot establish by clear and convincing evidence that he is not likely to flee or to pose a danger to others.

The Defendant's threat to this community was further evidenced by a call placed to the Broward Sheriff's Department by his employer on November 3, 2023, where his employer, Budgetel Hotel, alleged that he stole $1,255 in cash from his employer. On September 26, 2023,

Judge Altonaga ordered the Defendant to obtain employment as an additional condition of his bond. On October 17, 2023, the Defendant reported full-time employment at Budgetel Hotel. Less than three weeks later, the Defendant was terminated for the alleged theft of $1,255 from the hotel cash register. The manager of the hotel, Amin Jawani, contacted the Broward Sheriff's Office to report that the Defendant stole $1,255. Jiwani stated that the Defendant called around 6:00 am on November 2, 2023, stating that someone called the front desk while he was working pretending to be the owner of business, Vinny Patel. (Exhibit 7). The Defendant stated the individual called regarding a $5,000 fire inspection and instructed him to take money from the business and deposited it into an unknown Bitcoin ATM. Jiwani stated when Singh spoke to the owner regarding this, he wrote down the incident on a piece of paper and provided the ATM receipts. The receipts were for $l,165 and $136. Investigation revealed that the owner never called and never ordered Singh to deposit money into an ATM. The owner, Mr. Patel, stated that he had a hard time believing his story about being scammed and confronted the Defendant about making the payment authorization without his consent. Mr. Patel confirmed he immediately terminated the defendant from this employment. He also confirmed the Defendant did return the money that was taken.

If there is probable cause to believe the defendant committed another federal, state, or local felony while on release, a rebuttable presumption arises that there is no condition or combination of conditions of release that will assure the safety of the community. 18 U.S.C. § 3148(b). Stealing from a hotel cash register at your workplace is a crime in and of itself, but doing so while on pre-trial release for a multi-million-dollar fraud scheme is especially dangerous and egregious. The term dangerousness as used in the Bail Reform Act has a much broader construction than what might commonly be understood in everyday life and extends to non-physical harms. *See United States v.*

*King*, 849 F.2d 485, 487 n. 2 (11th Cir. 1988). If a presiding judge finds that the defendant's actions on release indicate that he might engage in criminal activity to the detriment of the community, such as corruption or other non-physical harms, the defendant may be appropriately detained. *See United States v. Gilley*, 771 F. Supp. 2d 1301, 1305 (M.D. Ala. 2011). The Defendant, a now-convicted fraudster, who violated his pretrial release conditions by evidently stealing from his place of work and lying to the court about his financials to obtain court appointed counsel poses as a clear detriment to the community and should be detained pending his sentencing.

## CONCLUSION

For the foregoing reason, the United States respectfully requests that the Defendant be remanded to federal custody pending sentencing.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   s/Robert F. Moore
      Robert F. Moore
      Assistant United States Attorney
      Court No. A5502488
      99 Northeast 4th Street
      Miami, Florida 33132
      (305) 961-9445
      Robert.moore@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on November 7, 2024, with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

            */s/ Robert F. Moore*
            ROBERT F. MOORE
            Assistant United States Attorney